Filed 1/28/25  P. v. Arzate CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID VALENZUELA ARZATE,<br><br>    Defendant and Appellant. | F087256<br><br>(Super. Ct. No. 1105533)<br><br>**OPINION** |

### THE COURT[1]*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Douglas C. Foster, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P. J., Detjen, J. and Fain, J.†

†      Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

In 2007, appellant and defendant David Valenzuela Arzate (defendant) was convicted of attempted premeditated murder and the jury found he personally used and discharged a firearm in the commission of the offense. On appeal, this court corrected his third strike sentence to 26 years plus 25 years to life and affirmed the judgment as corrected. (*People v. Arzate* (Apr. 2, 2009, F053074) [nonpub. opn.] (*Arzate I*).)

In 2023, the trial court recalled defendant's sentence after being advised by the Department of Corrections and Rehabilitation (CDCR) that he was eligible for resentencing because a prior prison term enhancement (Pen. Code,[2] § 667.5, subd. (b)) had been imposed. On recall, the court dismissed the prior prison term enhancement, conducted a full resentencing hearing, and denied defendant's motions to dismiss his prior strike convictions, the prior serious felony conviction enhancement, and the firearm enhancement, because it found any lesser sentence would endanger public safety. Defendant was resentenced to 25 years plus 25 years to life. (*People v. Arzate*, (July 5, 2023, F084720) [nonpub. opn.] (*Arzate II*).)

On appeal from the trial court's resentencing order, defendant argues the court failed to properly apply section 1385, as amended by Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81), and did not consider certain mitigating circumstances when it denied his requests to reduce his sentence. We affirm.

## FACTS[3]

"Kari M[.] and her estranged husband, Joel M[.], were arguing in the parking lot of their mutual place of employment. Defendant, who was dating Kari and by whom

---

[2]    All further statutory citations are to the Penal Code unless otherwise indicated.

[3]    The following facts and procedural background are from this court's prior nonpublished opinions in defendant's direct appeal (*Arzate I*, *supra*, F053074), and his appeal from the denial of his section 1172.6 petition for resentencing (*Arzate II*, *supra*, F084720). These opinions were filed, without objection, as supporting exhibits to the People's opposition to resentencing and are part of the instant record on appeal.

Kari was then pregnant, happened to call Kari on her cellular telephone while the argument was in progress. Joel took the telephone and exchanged taunts and heated words with defendant. After the call, Kari drove away.

"A short time later, Kari returned to the parking lot, followed by defendant and two other men in a separate car. Defendant came out of the car, and he and Joel immediately began fighting. During a lull in the action, Kari approached defendant, lifted his shirt, and took a handgun from defendant's waistband. She returned to her car and defendant and Joel resumed their fight.

"Joel, a much larger man than defendant, was getting the better of defendant in the fight. Defendant broke off the fight and went to Kari's car, entering on the passenger side. He and Kari struggled over the gun, then Kari threw the gun out the window. Defendant got out of the car and recovered the gun.

"Defendant pointed the gun at Joel, who was then 20 to 25 feet from him. Defendant began firing. Joel turned and ran in a zig-zag motion until he fell down, unharmed. In all, defendant fired about seven times.

"Joel stood up again and began yelling. Kari left in her car, and defendant and the other two men left in their car." (*Arzate I*, *supra*, F053074, pp. 2–3, fn. omitted.)

## PROCEDURAL BACKGROUND

On March 21, 2007, a second amended information was filed in the Superior Court of Stanislaus County charging defendant with count 1, attempted premeditated murder (§§ 664, 187); count 2, assault with a firearm (§ 245, subd. (a)(2)); count 3, participation in a criminal street gang (§ 186.22, subd. (a)); and count 4, possession of a firearm by a felon (§ 12021, subd. (a)), with firearm and gang enhancements, and prior conviction allegations.

### Conviction and Sentence

On March 28, 2007, after a jury trial, defendant was convicted of count 1, attempted premeditated murder, and the jury found true the section 12022.53,

subdivision (c) allegation that he personally and intentionally discharged a firearm; count 2, assault with a firearm; count 3, participation in a criminal street gang; and count 4, possession of a firearm by a felon. The jury found the gang enhancements attached to counts 1 through 3 were not true.

The trial court found true the allegations that defendant had three prior strike convictions, one prior serious felony conviction enhancement (§ 667, subd. (a)), and one prior prison term enhancement (§ 667.5, subd. (b)).

On May 17, 2007, the trial court sentenced defendant to the third strike term of 45 years to life for count 1, plus consecutive terms of 20 years for the firearm enhancement (§ 12022.53, subd. (c)), five years for the prior serious felony conviction enhancement, and one year for the prior prison term enhancement. The court stayed the sentence imposed for count 2 pursuant to section 654, and imposed concurrent terms for each of counts 3 and 4.

**Direct Appeal**

On April 2, 2009, this court filed the nonpublished opinion in *Arzate I*, defendant's direct appeal, and held the trial court erroneously determined the third strike sentence for count 1, attempted premeditated murder, was 45 years to life. We modified appellant's indeterminate sentence to the correct third strike term of 25 years to life, and affirmed the judgment as corrected.

On October 7, 2009, an amended abstract of judgment was filed that corrected defendant's third strike sentence on count 1 to 25 years to life, with consecutive determinate terms of 20 years for the firearm enhancement, five years for the prior serious felony enhancement, and one year for the prior prison term enhancement.

**Dismissal of Count 3**

On May 6, 2014, the trial court recalled defendant's sentence on the recommendation of the Attorney General, and vacated his conviction and the sentence imposed for count 3, participation in a criminal street gang. His underlying sentence

4.

remained unchanged at 26 years plus 25 years to life because the court had imposed a concurrent term for count 3.[4]

## SECTION 1172.75 RECALL AND RESENTENCING

The instant appeal is from proceedings that began in or about 2022 or 2023, when CDCR notified the trial court that defendant's case qualified for recall and resentencing pursuant to Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483), and sections 1172.7 and 1172.75, because the one-year term imposed for the section 667.5, subdivision (b) enhancement was now legally invalid.

On April 4, 2023, the trial court appointed counsel and placed the matter on calendar.

**Defendant's Brief**

On September 29, 2023, defendant filed a brief for the resentencing hearing, and requested the trial court recall his sentence and dismiss the term imposed for the now-invalid prior prison term enhancement pursuant to section 1172.75.

Defendant argued that once his sentence was recalled, the trial court had discretion to resentence him to a lesser aggregate term pursuant to Senate Bill 483 and subsequently-enacted legislation. Defendant stated that as a result of amendments enacted by Senate Bill No. 620 (2017–2018 Reg. Sess.) and the current version of section 1385, the court had discretion to dismiss or reduce the 20-year term imposed for the section 12022.53, subdivision (c) firearm enhancement.

Next, defendant argued that as a result of amendments to section 654, the trial court had discretion to stay the term imposed for attempted premeditated murder, and instead select count 2, assault with a deadly weapon, as the principal term that would result in a lesser aggregate sentence.

---

[4]     In 2022, the trial court denied defendant's section 1172.6 petition for resentencing for failing to state a prima facie case. In *Arzate II*, we affirmed the court's order.

Defendant further argued that as a result of amendments enacted by Senate Bill No. 1393 (2017–2018 Reg. Sess.), the trial court also had discretion to dismiss the five-year term for the prior serious felony conviction enhancement (§ 667, subd. (a)).

Finally, defendant argued the trial court should also dismiss the three prior strike convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, because the circumstances of the current offense supported resentencing him as a "non-strike offender" based on mitigating circumstances of his life history and his good conduct in prison, and submitted documentary exhibits about his completion of education classes in prison.

**The People's Response**

On November 13, 2023, the People filed a response supported by documentary exhibits.

The People agreed the trial court had to recall appellant's sentence and dismiss the prior prison term enhancement, and the court had discretion to resentence him on his aggregate term. However, the People argued the court should not further reduce defendant's sentence based on the circumstances of the current offenses and his prior convictions for assault with a firearm. The People further argued that while defendant participated in education and work assignments in prison, his prison record also consisted of rules violations that included possession and distribution of controlled substances on multiple occasions, possession of a cell phone on multiple occasions, and possession of an inmate-produced weapon. The People argued defendant's three prior strike convictions should not be dismissed because his record and prison conduct did not place him outside the spirit of the "Three Strikes" law.

**RECALL AND RESENTENCING HEARING**

On November 28, 2023, the trial court held the hearing to recall and resentence defendant on the prior prison term enhancement.

6.

Defendant's counsel stated the trial court had discretion to reduce the section 12022.53 firearm enhancement from subdivision (c) to subdivision (b): "If the court were to reduce that to a [subdivision] (b), it[ would] be a straight [10]-year prior. And we'd ask it be served concurrently." Counsel argued the court may also have discretion to reduce the firearm enhancement to one imposed under section 12022.5, but believed the issue was pending before the Supreme Court.[5]

Defense counsel stated the trial court also had discretion to select count 2, assault with a deadly weapon, as the principal term, instead of count 1, attempted murder, and to dismiss the prior strike convictions.

Counsel asked the trial court to review the documentary exhibits showing defendant's good performance in prison and argued that defendant was "now a 49-year-old individual. He's been in custody for more than a decade. He does not appear before the [parole] board until 2034. Regardless of the relief this Court were to grant, he would still be required to appear before the board, assuming the Court does not strike the strikes."

The prosecutor replied defendant was the type of person who should be sentenced under the Three Strikes law. He committed an assault with a firearm while he was in the military, resulting in his discharge and the strike priors. The circumstances of defendant's commitment offense of attempted murder were "disturbing" because defendant brought a gun to a fistfight and fired it seven times at the unarmed victim. The prosecutor argued

---

[5]     In *People v. Tirado* (2022) 12 Cal.5th 688, the Supreme Court held "the statutory framework permits a court to strike the section 12022.53(d) enhancement found true by the jury and to impose a lesser uncharged statutory enhancement instead." (*Id*. at p. 692.) In *People v. McDavid* (2024) 15 Cal.5th 1015, the court held "the same statutory framework permits a court, after striking a section 12022.53 enhancement, to impose a lesser included, uncharged enhancement authorized elsewhere in the Penal Code—that is, outside of section 12022.53." (*Id*. at p. 1021.)

defendant's violations of prison rules were "extensive," and his past and present criminality "support that additional resentencing will endanger public safety."

## Defendant's Statement

Defendant personally addressed the trial court and stated he took plea deals on his prior convictions and did not realize "that would come back, you know, to haunt me right here with this case." Defendant said his sentence should be reduced because he did not attempt to murder anyone, "shots rang out," and he did not "do none of that." Defendant said that even if the court did not "give me what I'm seeking right now here, I'm going to be back after the new year anyway under the Racial Justice Act. So either way I'm going to be back on appeals."

## The Trial Court's Ruling

The trial court agreed with the parties that it would dismiss the one-year sentence imposed for the section 667.5, subdivision (b) prior prison term enhancement.

The trial court stated that defendant was entitled to a full resentencing hearing based on current sentencing rules and any other changes in the law that "reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniform sentences. In doing so the Court may consider post-conviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of petitioner while incarcerated. Evidence that reflects whether age, time served, or diminished physical condition, if any, have reduced the defendant's risk of future violence; and evidence that reflects circumstances have changed since the original sentence so that continued incarceration is no longer in the interest of justice."

The trial court acknowledged defendant requested a stay of the sentence for attempted murder, and to select assault with a deadly weapon as the principal term and impose the midterm, and dismiss or reduce the firearm enhancement, stay or strike the prior serious felony conviction enhancement, and dismiss the prior strike convictions.

The court denied defendant's sentencing requests:

"As the strike priors are not enhancements, and instead are an alternate sentencing scheme, when conducting a resentencing hearing the Court does not consider striking or dismissing the [section] 667[, subdivision] (d) priors. However, the Court is empowered with discretion to strike and/or dismiss the [section] 12022.53[, subdivision] (c) [firearm enhancement], or consider a lesser type of enhancement[]. The Court is empowered to strike the [section] 667[, subdivision] (a) enhancement, and to stay the term that carries the longest sentence. As applicable here, the Court does have the authority to sentence [defendant] to [c]ount 2 and stay the sentence to [c]ount 1. The [prosecutor] agrees [defendant] is eligible to have his [section] 667.5[, subdivision] (b) prior stricken. The [prosecutor] oppose[s] any additional relief, stating there is clear and convincing evidence that imposing a lesser sentence would endanger public safety."

The court reviewed the circumstances of defendant's convictions, his prior record, and his conduct in prison:

"On March 1[,]2006[, defendant's] girlfriend had an argument with her estranged husband. He was not present, but happened to call his girlfriend during the argument. The girlfriend left the scene of the argument, but returned a short while later with [defendant] and two other men. [Defendant] began to fight the estranged husband. During the fight the girlfriend retrieved a handgun that was located in [defendant's] waistband and placed it in one of the cars. When the estranged husband began to get the better of [defendant] during the fight, [defendant] retrieved the firearm he was prohibited from even possessing and shot at the unarmed, estranged husband seven times as he ran in a zigzag motion trying to avoid getting hit. [Defendant] then drove off. Those are the circumstances of the instan[t] offense.

"Prior to this on September 1[,] 1995, [defendant] was convicted of three counts of assault with a firearm and sentenced to five years. He violated parole and was returned to prison on June 21[,] 2002.

"[Defendant] has served in the [military]. These are the individualized considerations, along with the actual circumstances, of the offense … and his … priors that the Court is considering.

"While housed at CDCR he has worked as a recorder and recreational aide. He has participated in substance abuse programming, family and parent support programs, parenting education, Veteran support programming and educational courses, such as vocational computer and related technology.

9.

"However, he has significant violations of the rules. Those violations paint a very different picture. In the last six years since [defendant] was incarcerated he committed seven rules violations:

"In September … 2017 he received a rules violation for possession of alcohol. In January … 2018 he received a rules violation for distribution of controlled substances after relatively large amounts of methamphetamine and heroin, along with a cell phone, were located in [defendant's] cell. In March … 2019 he received a rules violation for disobeying an order. In May … 2019 he was again found in possession of a cell phone. In March … 2020 another cell phone was located in [defendant's] possession. That same day, three bindles were located in [defendant's] bowel movement; one of which was an inmate-manufactured weapon. Another … of the bindles contained marijuana.

"These rules violations suggest [defendant] has not benefitted from any rehabilitation and has gained little, if anything, from the treatment and education he has received. Today he minimizes those rules violations."

The trial court addressed defendant's request to dismiss his three prior strike convictions:

"As stated earlier, the [section] 667[, subdivision] (d) [strike] priors are not enhancements, but an alternate sentencing scheme, not subject to relief of [Senate Bill] 81, an amendment to … [s]ection 1385. Even if the Court had authority to do so, it would not dismiss the three [section] 667[, subdivision] (d) [strike] priors because [defendant] does not fall outside the spirit of the three strikes law.

"In deciding whether … to strike and/or dismiss the [section] 667[, subdivision] (d) priors, the Court must consider whether, in light of the nature and circumstance of [defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of [defendant's] background, character, and prospects that [defendant] may be deemed outside the three strikes law spirit in whole or in part, and hence, should be treated as though [defendant] had not previously been convicted of one or more serious and/or violent felonies. The consideration is and must be individualized.

"[D]efendant requests the Court to dismiss the three strikes priors. It is true that the priors were separate in the same case, but they, like this offense, were violent and involved the use of a firearm. [Defendant] was not successful on parole when given the opportunity for release. Approximately three to four years after his release from prison, upon

10.

violating parole, he committed another violent act. While in custody [defendant] has demonstrated continued unwillingness or inability to be a law-abiding individual. Additionally, while in custody, he possessed a weapon, which reflects [defendant] engages in violent behavior, at least as of three and a half years ago.

"*Today, he shows absolutely no remorse for his conduct and accepts no responsibility for his prior criminal acts*. [Defendant] is not outside the spirit of the three strikes law in whole or in part."

The trial court denied defendant's other resentencing requests.

"The Court declines to strike the [section] 12022.53[, subdivision] (c) or the [section] 667[, subdivision] (a) enhancement. Because the Court finds, by clear and convincing evidence, that imposing any lesser sentence to what was imposed would endanger public safety.

"The Court declines to stay the [c]ount 1 [sentence] and sentence [defendant] to [c]ount 2 instead. In this case it would make no difference because the [section] 667[, subdivision] (d) priors cannot be stricken, and would not be stricken if the Court had power to do so.

"The … conduct for which [defendant] was convicted is best described by [c]ount 1. He shot at an [unarmed] person seven times when the unarmed person continued to dodge bullets. His girlfriend, twice, attempted to ensure [defendant's] gun was not accessible to [him], and yet he found the gun and used it.

"Further, the Court declines to strike the section 12022.53 [firearm] enhancement not only for the conduct, but because of [defendant's] prior criminal acts for which he was sentenced to prison. They … also involved a lethal weapon.

"The Court is required to strike the [section] 667.5[, subdivision] (b) prior as [defendant] is eligible for that relief. Accordingly, the sentence is recalled and the [section] 667.5[, subdivision] (d) prior is stricken."

The trial court resentenced defendant to an indeterminate third strike term of 25 years to life for count 1, attempted murder, plus consecutive terms of 20 years for the section 12022.53, subdivision (c) firearm enhancement and five years for the section 667, subdivision (a) prior serious felony conviction enhancement; and stayed the sentence for count 2, assault with a firearm.

11.

On November 30, 2023, defendant filed a timely notice of appeal.[6]

## DISCUSSION

On appeal, defendant argues the trial court abused its discretion when it denied his motions to reduce his aggregate sentence and failed to consider amendments to the sentencing laws.

## I.  Recall and Resentencing

We begin with the statutory reason the trial court recalled defendant's sentence. "Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years.  [Citation.]  Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136) (Stats. 2019, ch. 590) amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses. [Citations.]  Enhancements based on prior prison terms served for other offenses became legally invalid.  [Citation.]  The amendment was to be applied retroactively to all cases not yet final on January 1, 2020."  (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379–380 (*Burgess*).)

"Later, in 2021, the Legislature enacted [Senate Bill] 483 .…  This bill sought to make the changes implemented by Senate Bill 136 retroactive.  [Citation.]  It took effect on January 1, 2022, and added former section 1171.1, now section 1172.75 .…" (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.)

Section 1172.75 establishes a mechanism to provide affected defendants a remedy for those legally invalid enhancements, and the resentencing process begins with

---

[6]    On February 1, 2024, while this appeal was pending, the People advised the trial court about clerical errors in the abstract of judgment.  On February 6, 2024, the court filed an order that corrected the typographical errors in the abstract to show that appellant was resentenced to an aggregate determinate term of 25 years plus the indeterminate term of 25 years to life.

corrections officials. (*People v. Cota* (2023) 97 Cal.App.5th 318.) "Subdivision (b) of section 1172.75 directs the Secretary of [CDCR] and the correctional administrator of each county to 'identify those persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a) and … provide the name of each person … to the sentencing court that imposed the enhancement.' " (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.) "After the trial court receives from [CDCR] and county correctional administrator the information included in subdivision (b) of section 1172.75, 'the court shall review the judgment and verify that the current judgment includes a sentencing enhancement described in subdivision (a),' and if so, 'recall the sentence and resentence the defendant.' " (*Burgess*, *supra*, 86 Cal.App.5th at p. 380.)

At the resentencing hearing, section 1172.75 requires the trial court to "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (§ 1172.75, subd. (d)(3).)

"Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed." (§ 1172.75, subd. (d)(1).)

Section 1172.75, subdivision (d) "vests the superior court with broad discretion based on an inherently factual inquiry" in resentencing a defendant, and we review the

13.

resentencing order for an abuse of that discretion. (*People v. Garcia* (2024) 101 Cal.App.5th 848, 805, 856–857.)

### *Analysis*

The trial court herein was well aware that when it recalled defendant's sentence to address the prior prison term enhancement, it was also required to conduct a full resentencing hearing and exercise its discretion as to each element of his aggregate term in accordance with statutory amendments enacted after his original sentencing hearing. (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402.) "Under an abuse of discretion standard, ' "we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious." ' [Citations.] Ultimately, the superior court's risk finding will be upheld 'if it falls within "the bounds of reason, all of the circumstances being considered." ' " (*People v. Garcia*, *supra*, 101 Cal.App.5th at p. 857.)

As recounted above, the trial court made extensive findings explaining why it was declining to exercise its discretion to dismiss the firearm enhancement and the prior serious felony enhancement, because it found "by clear and convincing evidence, that imposing any lesser sentence to what was imposed would endanger public safety." The court stated it did not have discretion to dismiss the prior strike convictions but addressed the merits of defendant's motion, explained why it would not dismiss the prior strikes, and found defendant was not outside the spirit of the Three Strikes law. Based on the record and the court's findings, we cannot say the court abused its discretion in denying defendant's request to further reduce his aggregate sentence.

## II. Senate Bill 81 and Section 1385

Defendant argues that while the trial court made certain findings in denying his resentencing requests, those findings are erroneous because the court failed to refer to and apply the 2022 amendments to section 1385 enacted by Senate Bill 81. Defendant asserts

14.

the court failed to "afford 'great weight' to the statutorily described mitigating factors" enacted by Senate Bill 81, and that shows it failed to understand and properly exercise its discretion.

## A. Section 1385

Under section 1385, a defendant could invite the trial court to exercise its power by an application to strike a count or allegation of an accusatory pleading. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)

On January 1, 2022, Senate Bill 81 went into effect (Stats. 2021, ch. 721, § 1), and amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674; *People v. Coleman* (2024) 98 Cal.App.5th 709, 723–724.)

As a result of these amendments, section 1385, subdivision (c) now states: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).)

Section 1385, subdivision (c)(2) states:

> "In exercising its discretion under this subdivision, the [trial] court shall consider and afford *great weight* to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others*." (§ 1385, subd. (c)(2), italics added.)

As amended, section 1385, subdivision (c) enumerates nine "mitigating circumstances" that include situations where multiple enhancements are imposed in a single case, the current offense is connected to mental illness, prior victimization or

15.

childhood trauma, the defendant was a juvenile, or the enhancement is based on a conviction that is over five years old. (§ 1385, subd. (c)(2)(B), (D), (E), (G), (H).)

The trial court's decision not to dismiss an enhancement pursuant to section 1385, subdivision (c), is reviewed for an abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) Additionally, "[w]hen being sentenced, a defendant is entitled to decisions made by a court exercising informed discretion. [Citation.] A court acting while unaware of the scope of its discretion is understood to have abused it." (*People v. Tirado*, *supra*, 12 Cal.5th at p. 694.)

### B. The Parties' Initial Arguments

At the time of the initial briefing in this case, there was disagreement among the appellate courts as to how to construe and apply section 1385, subdivision (c) when mitigating circumstances are present.

As the Supreme Court explained, Division 2 of the Second District Court of Appeal held in *People v. Walker* (2022) 86 Cal.App.5th 386, " 'that section 1385's mandate to "afford great weight" to mitigating circumstances erects a rebuttable presumption that obligates a court to dismiss the enhancement *unless* the court finds that dismissal of that enhancement … would endanger public safety.' [Citation.] The Sixth District subsequently disagreed [in *People v. Ortiz* (2023) 87 Cal.App.5th 1087], concluding instead that section 1385, subdivision (c)(2) does not preclude a trial court from relying on countervailing aggravating factors, apart from a danger to public safety, to uphold an enhancement, despite the presence of one or more mitigating circumstances. [Citation.] More specifically, it found that absent a finding that dismissal would endanger public safety, a court is required to engage 'in a holistic balancing *with special emphasis* on the [nine] enumerated mitigating factors,' in which those mitigating factors

16.

weigh 'strongly in favor of … dismissal.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1028–1029 (*Walker*).)

In the initial briefing in this case, defendant acknowledged the disagreement between the appellate courts, but relied on the appellate opinion in *Walker*, *supra*, 86 Cal.App.5th 386, and argued section 1385, subdivision (c) created a rebuttable presumption in favor of dismissing enhancements where one or more of the enumerated factors apply. Defendant argued the trial court abused its discretion in failing to reduce his sentence and the instant case must be remanded for another resentencing hearing. The People disagreed and relied on *Ortiz* as the better-reasoned interpretation of subdivision (c).

### C. *Walker*

In *Walker*, the Supreme Court resolved the conflict and held "the plain language of section 1385, subdivision (c)(2) does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Walker*, *supra*, 16 Cal.5th at p. 1033.)

> "[T]he plain language of section 1385, subdivision (c)(2) contemplates that a trial court will exercise its sentencing discretion in a manner consistent with the *Ortiz* court's understanding. *Specifically, absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present*. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker*, *supra*, 16 Cal.5th at pp. 1029–1030, italics added.)

*Walker* explained that "if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the

enhancement. *But ultimately, the court must determine whether dismissal is in furtherance of justice.…* [¶] We also emphasize that, as noted, there must be substantial, relevant, and credible evidence of aggravating factors to neutralize the 'great weight' of the mitigating circumstances. [Citations.] Without credible evidence to support findings on aggravating circumstances, judges could disregard mitigating factors without a proper basis for doing so. This would be incompatible with the 'great weight' the Legislature has attached to the enumerated mitigating circumstances." (*Walker*, *supra*, 16 Cal.5th at p. 1036, italics added.)

> "[T]he standard we set out today itself gives force to the 'great weight' standard: Pursuant to section 1385, subdivision (c)(2), *absent a finding that dismissal would endanger public safety*, a court must assign significant value to the enumerated mitigating circumstances when they are present. In practice, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*Walker*, *supra*, 16 Cal.5th at pp. 1037–1038, italics added.)

As applied to that case, *Walker* found the trial court acknowledged Senate Bill 81's amendments to section 1385 at the resentencing hearing, but declined to strike the defendant's prior serious felony enhancement because it was not in the interests of justice to do so, even though there were multiple enhancements in the case. (*Walker*, *supra*, 16 Cal.5th at p. 1031.) *Walker* declined to remand for another resentencing hearing to apply the "correct 'great weight' standard." (*Id*. at p. 1038.) "[W]here the Court of Appeal upheld the trial court's refusal to dismiss defendant's prior serious felony enhancement under a presumption in favor of dismissal that could only be overcome by a finding that dismissal would endanger public safety, defendant fails to persuade he is entitled to any relief under our less restrictive understanding of a trial court's authority pursuant to section 1385, subdivision (c)(2). We therefore affirm." (*Ibid*.)

### D. The Parties' Supplemental Briefs

This court ordered the parties to file supplemental briefs to address the effect of *Walker* on the trial court's findings at the resentencing hearing.

Defendant argued that even after *Walker*, the trial court's public safety finding in this case still constituted an abuse of discretion because it engaged in "an entirely retrospective analysis" instead of "look[ing] forward" to assess defendant's risk at the time of release, which would have been in approximately 2032 if his sentence was reduced, instead of 2057. Defendant relied on *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*) to assert the trial court was required to focus on his current dangerousness to make the public safety finding.

The People responded that the trial court's extensive public safety findings were based on defendant's future dangerousness, consistent with *Walker*, and "obviates the need for the court to consider mitigating factors under section 1385, subdivision (c)(2)."

## III. Analysis

The trial court's public safety findings are consistent with *Walker* and undermine defendant's arguments about a rebuttable presumption or that the court was required to address mitigating circumstances.

As for defendant's reliance on *Gonzalez*, a case decided before *Walker*, it held the amendments to section 1385 required the trial court to make the public safety finding based on the date on which the defendant could be released if the enhancements were dismissed. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 230–231.) "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the

public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*Id*. at p. 228.)

*Gonzalez* effectively held the public safety inquiry requires a forward-looking analysis. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 228.) To the extent *Gonzalez*'s holding is still valid after *Walker*, the trial court's extensive findings satisfied the standards expressed in both cases. While the court cited defendant's prior convictions, it also found he was not successful when released on parole in those cases, and he committed another violent act approximately three to four years after being released. The court also cited the facts of defendant's current convictions, and acknowledged his evidence about his successful participation in prison programs. However, the court further found defendant committed "significant violations" of prison rules that "paint a very different picture" of his postconviction conduct. These violations included possession of alcohol, possession and distribution of methamphetamine and heroin, possession of a cell phone on three separate occasions, and possession of marijuana and an inmate-manufactured weapon secreted in his body.

The trial court concluded that defendant's postconviction conduct demonstrated that he engaged in violent behavior and his "continued unwillingness or inability to be a law-abiding individual." "These rules violations suggest [defendant] has not benefitted from any rehabilitation and has gained little, if anything, from the treatment and education he has received. Today he minimizes those rules violations," and "he shows absolutely no remorse for his conduct and accepts no responsibility for his prior criminal acts."

In denying defendant's motions to further reduce his aggregate sentence, the trial court did not abuse its discretion when it considered both his current and future dangerousness when it found by clear and convincing evidence that imposing any lesser sentence to what was imposed would endanger public safety.

## DISPOSITION

The trial court's judgment of November 28, 2023, is affirmed.